Matthew D. Kaufman, Wyo. Bar #6-3960
Lucas Buckley, Wyo. Bar #6-3997
Nathan Nicholas, Wyo. Bar #7-5078
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
(307) 634-0985 (fax)
mkaufman@hkwyolaw.com
lbuckley@hkwyolaw.com
nnicholas@hkwyolaw.com

ATTORNEYS FOR PLAINTIFF MICHAEL TERPIN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MICHAEL TERPIN, INDIVIDUALLY, AND AS A DIRECTOR OF ITMO US, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket No. _____ |
| JASON COONER, INDIVIDUALLY AND AS A DIRECTOR AND OFFICER OF ITMO US, INC., and ITMO US, INC. | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

**COMES NOW** Plaintiff Michael Terpin, as shareholder and Director of ITMO US, Inc., by and through his attorneys, HATHAWAY & KUNZ, LLP, and for his Complaint against Defendants Jason Cooner and ITMO US, LLC, state and alleges as follows:

### PARTIES

1.      Plaintiff Michael Terpin ("Terpin") is a resident of San Juan, Puerto Rico.

2.      Defendant ITMO US, Inc. ("ITMO") is a Wyoming Corporation with its registered agent located at 1912 Capitol Ave Ste 500, Cheyenne, WY 82001 and a registered address located at 5607 Summit Pointe, Pinson, AL 35126.

3.      Upon information and belief, Defendant Jason Cooner ("Cooner") is a resident of San Juan, Puerto Rico with his personal residence located at 660 Miramar Ave., Penthouse 2, San Juan, Puerto Rico 00913.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction under 28 USC § 1331.

5.      Venue is proper in this Court under 28 USC § 1391(b)(1) & (c)(2).

6.      As a Wyoming Corporation, ITMO is governed by the Wyoming Business Corporations Act (WBCA), Wyo. Stat. §17-16-101, *et. seq*.  As directors, Plaintiff Terpin and Defendant Cooner are bound by the duties and obligations established in the WBCA.

## BACKGROUND

7.      ITMO, US Inc. was registered with the Wyoming Secretary of State of April 4, 2020.

8.      Upon information and belief, ITMO was formed by Defendant Cooner through a legal service called Rocket Lawyer.

9.      Rocket Lawyer continues to serve as the registered agent of the Company.

10.      ITMO also uses the name SDG Exchange as an informal tradename.

11.      Upon information and belief, prior to the formation of ITMO, Mr. Cooner had a Florida-based company called "The ITMO" (hereafter referred to as the "Florida Entity").

12.      Upon information and belief, the Florida Entity is a predecessor entity to ITMO.

13.     Florida's Division of Corporations shows that the Florida Entity was formed on January 18, 2019 and was administratively dissolved on September 25, 2020.

14.     Upon information and belief, in 2020, Mr. Cooner rolled the assets of the Florida Entity into ITMO, including the Florida Entity's bank account.

15.     Upon information and belief, some of the shareholders in the Florida Entity were offered nominal equity in ITMO in contemplation of the failure/dissolution of the Florida Entity.

16.     Upon information and belief, the Florida Entity was instrumentality created by Defendant Cooner to defraud investors, using the same, or similar, methodologies as laid out below for Defendant ITMO.

17.     On or around October 2020 Mr. Terpin and Mr. Cooner met and agreed to work together on forming "Carbono" which is intended to be a carbon-backed utility token.

18.     As a result of the October 2020 meetings, Mr. Terpin entered into two agreements with ITMO.  The first agreement was for a 1% stake in the company, to vest over two years ("Chairman Agreement").  The second agreement was for advising services to create a model for the Carbono token in exchange for a 3% equity stake in ITMO ("Advisor Agreement").

19.     Some of the intellectual property supporting the Carbono concept was created by Mr. Terpin and contributed to ITMO for commercialization in exchange for equity in the Company.

20.     In contemplation of the costs for commercialization, in early 2021, Mr. Terpin suggesting using a SAFE to bring in more capital.

21.     SAFE is an acronym for a Simple Agreement for Future Equity.

22.     SAFEs are a contractual agreement between an investor and company that provides the rights to the investor for future equity. However, in a SAFE, the share price is not determined

at the time of the investment but determined according to a future priced round of investment or liquidity.

23. The United States Security and Exchange Commission ("SEC") considers SAFEs a security and are thus regulated under the Securities Act of 1933 and the Securities Exchange Act of 1934.

24. Mr. Terpin originally invested $50,000 in an ITMO SAFE on January 29, 2021.

25. In April 2021, Mr. Terpin agreed to increase his SAFE investment to $1 million, including his original $50,000 investment when ITMO brought in David Jensen as an investor and board member.

26. Mr. Terpin's SAFE with ITMO allows for an investment of $1million to be contributed from Mr. Terpin to ITMO.

27. Prior to signing the SAFE, Mr. Terpin, as an investor, and Mr. Cooner, as a director and officer of ITMO, agreed in writing by email that Mr. Terpin could contribute the $1 million over a period of time.

28. To date, Mr. Terpin has contributed more than $700,000.00 of the funds to ITMO.

29. In addition to participating in the SAFE, On April 28, 2021, Mr. Terpin entered into a contract for chairman services.

30. The contract for chairman services grants an additional 5,000 shares of common stock to Mr. Terpin.  Defendants represented to Plaintiff that 5,000 shares represent 5% of the issued common shares.

31. From April 28, 2021, until February 9, 2022, ITMO represented to potential investors as well as current shareholders that Mr. Terpin was the Chairman of the company.

32.     From April 28, 2021, Mr. Terpin believed, and continues to believe, that he is the Chairman of the Board of Directors.

33.     On, or around, April 28, 2021, Mr. Terpin approached David Jensen and asked if he would invest in the SAFE.  Mr. Jensen's investment was memorialized on May 11, 2021

34.     Subsequent to Mr. Jensen investing in the SAFE, Mr. Jensen joined the Board of Directors, becoming the third member of the Board of Directors.

35.     Mr. Jensen continues to serve as a member of the Board of Directors.

36.     As early as July 13, 2021, Mr. Jensen and Mr. Terpin, as Directors, began requesting corporate formalities and access to the Corporate Bylaws.

37.     Since July 13, 2021, Mr. Cooner has continuously denied the other Board members access to corporate documents, accounting, and capital tables.

38.     On September 23, 2021, the Board of Directors held a meeting in which Mr. Cooner and Mr. Terpin were present as directors.  Also present at the meeting were Manny Alicandro, ITMO's in-house legal counsel, and Claire Cui.  In that meeting, the Board voted, among other items, to authorize a securities round.

39.     On December 28, 2021, the Board of Directors held an annual meeting, present at that meeting were Jason Cooner, Michael Terpin (Chairman), James Haft, and David Jensen.  In that meeting, the Board approved the September 23, 2021 meeting minutes.  Also at that meeting, David Jensen was affirmed as Director to replace James Haft, who became a board observer.

40.     On December 24, 2021, Mr. Terpin sent a memo to Mr. Cooner.  In that memo, Mr. Terpin requested a reconciliation of ITMO to understand how the funds have been spent.  Mr. Terpin also questioned why Mr. Cooner had not yet collected nearly a half million dollars' worth of committed investment.

41.     In that same memo, Mr. Terpin requested a budget from Mr. Cooner for monthly operating costs.

42.     To date, Mr. Cooner has either avoided or refused to address these issues with the Board or with Mr. Terpin.

43.     In early 2022, an insider whistleblower provided Mr. Terpin and Mr. Jensen every bank statement to the Florida Entity since August 2019.

44.     These bank statements show that investment funds intended for ITMO were deposited to the Florida Entity's bank accounts, despite the Florida Entity being insolvent and defunct. Including, but not limited to, the following:

- January 29, 2021: $50,000 from Mr. Terpin intended for ITMO
- February 9, 2021: $50,000 from Mr. Jensen intended for ITMO
- May 3, 2021: $50,000 from David Lathrop, an investor in the SAFE.
- August 17: $40,000 transferred from ITMO's bank account to the Florida Entity's account
- September 13, 2021: $50,000 transferred from ITMO's bank account to the Florida Entity's account.

45.     Upon information and belief, the only incoming cash into the Florida Entity's bank account since 2020 are investment funds intended for ITMO.

46.     Based upon reasonable assumptions, it appears that the bank account brought in about $741,888.63 in investment monies.

47.     Mr. Cooner spent nearly every single dollar of the cash deposited into the account. From March 1, 2019 through February 2, 2022, Mr. Cooner spent $739,649.11.

48.     Of the $741,888,63 of investment income, only about $163,992.93 can reasonably be attributed to business expenses.

49.     Based upon the information provided in these bank statements, it appears as though, among other unapproved personal expenses, Mr. Cooner spent:

- Approximately $15,343.26 to purchase, maintain and operate a vehicle.
- Approximately $31,423 in ATM cash withdrawals, including thousands of dollars withdrawn at gentlemen's clubs in Puerto Rico.
- Approximately $5,687.71 in movie and video streaming services.
- Approximately $29,846.63 in food and dining, a majority of which is unreported as a business expense.
- Approximately $1,593.86 in gambling and resort charges.
- Approximately $9,564 in personal shopping on Amazon.
- Approximately $9,907 in personal shopping at clothing stores.
- Approximately $30,609.61 spent on home furnishings.
- Approximately $4,326.92 on jewelry.
- Approximately $246,218.69 in miscellaneous shopping not attributable to business expenses, including political donations, Ebay and Etsy.  This category also includes more than $60,000 in wire transfers through Western Union to an undisclosed person or entity.
- Approximately $10,662.65 in personal care such as CVS, Sports Clips, and spa charges.
- Approximately $24,556.98 in unspecified travel expenses.
- Approximately $8,368.10 in vacation travel and expenses.

50.     After receiving these bank statements, Mr. Terpin expressed concern to the Board, including Mr. Cooner.

51.     On February 8, 2022, Mr. Terpin and Mr. Jensen, as a majority of the members of the Board, approved consent minutes suspending Mr. Cooner as an officer of the Company.

52.     The purpose of this suspension is to stop any corporate actions including spending and fundraising in order to allow the Board to fully conduct an investigation into the Company's activities.

53.     In retaliation to Mr. Terpin's inquiry and the Board's action, Mr. Cooner, despite lacking the power to do so, hired a Florida law firm to terminate Mr. Terpin's various contracts with the company and call the SAFE in default.

54.     These same "terminations" claim that Plaintiff Terpin and Mr. Jensen are not, and were never, members of the board of directors, which is contrary to all representations made to Plaintiff and other would-be investors just months prior.

55.    There is no default provision or language in the SAFE contract and the parties had already agreed, in writing, to accept the money on an "as needed" basis.

56.    On February 13, 2022, Defendants called a shareholder meeting for February 25, 2022.  In that notice, Defendants intended to pack the Board with people friendly to Mr. Cooner's position and formalize his terminations of Mr. Terpin and Mr. Jensen.

57.    This notice did not include all shareholders listed in the May 2021 shareholder ledger. The notice included other individuals who Plaintiff is unfamiliar with and questions their role as a shareholder.

58.    Upon information and belief, despite his suspension as CEO, Mr. Cooner and ITMO continue to sell, or at the very least market, unregistered and unauthorized securities in violation of Wyoming and Federal securities laws, including the SAFE agreement as well as the "Carbono token," which has not yet been created or approved.

59.    Upon information and belief, Defendants have previously used Gemini and Binance accounts to hold the digital currency in order to hide them from Plaintiff and other Board members.

60.    Gemini is a digital currency exchange, allowing the purchase and sale of various digital currencies such as Bitcoin.  Gemini also has a service that provides a "wallet" to the user.

61.    Binance US is a licensee of the world's largest cryptocurrency exchange and provides similar services to Gemini.

62.    Defendants have accepted investor funds in digital currency through an online wallet created for ITMO.  As can be seen in the blockchain register, more than $500,000 have been

transferred in ITMO's wallet and then immediately transferred out into Defendant Cooner's personal digital wallets.

63.     Upon information and belief, the funds Mr. Cooner and ITMO raise through Gemini will primarily be used for personal items in order to further subsidize his lifestyle.

64.     Upon information and belief, some of the funds raised by Mr. Cooner have not been reported to the Company and the investors have not been recorded into ITMO's capital table or SAFE ledger.

65.     Upon information and belief, Defendants have artificially inflated Mr. Cooner's shareholding power by misrepresenting to investors and would-be investors the share value of ITMO.

66.     Defendants represent Mr. Cooner has 83% of the shareholding vote.

67.     Upon information and belief, Defendants have represented an initial valuation of $25 million to potential investors, but after the investment, recorded their shareholding as a fraction of the market value promised.

68.     The exact specifics of these investments as well as the spending habits of Defendant Cooner are currently a subject of an investigation launched by Plaintiff Terpin and David Jensen in their roles as directors.

## FIRST CAUSE OF ACTION
## CONVERSION

69.     Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     It is estimated that ITMO has brought in roughly $2 million worth of investment funds.

71.     Upon information and belief, in the Bank account for the Florida Entity alone, nearly $750,000 was deposited into the account from investors and nearly $600,000 was spent on personal charges by Mr. Cooner.

72.     Upon information and belief, there remain two other accounts, one at Regions Bank in Alabama and one at the Gemini Exchange that have had similar spending patterns.

73.     Upon information and belief, both bank accounts sit at either a negative balance or a balance less than $10.

74.     Upon information and belief, very little of the funds were actually spent on the development and commercialization of Carbono.

75.     Mr. Cooner has unlawfully exercised dominion over the Company's cash and digital currency.

76.     Mr. Cooner has deprived the Company of its lawful use of the cash and digital currency.

77.     Mr. Terpin has been damaged by this conversion in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTIES AS TO MR. COONER AS SUPER-MAJORITY SHAREHOLDER

78.     Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79.     A supermajority shareholder owes a fiduciary duty to the other minority shareholders.[1]

---

[1] A dominant or controlling shareholder stands in a fiduciary position to the corporation and thus their dealings with the corporation must not only be in good faith, but also inherently fair to the corporation and shareholders. *E.g.*, *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 LEd. 281 (citations omitted); *Zahn v. Transamerica Corp.*, 162 F.2d 36, 42 (3d Cir. 1947); *Hyams v. Calumet & Hecla Mining Co.*, 6 Cir., 221 F. 529, 537 ("the rule…is

80.     Mr. Cooner's wielding of his 83% shareholder in an attempt to block corporate governance and an investigation into his spending at the Company is a breach of these fiduciary duties.

81.     Mr. Cooner has acted in a self-dealing manner, which have, or will, deprive minority shareholders of their rights.

82.     Mr. Cooner has breached his fiduciary duties to the minority shareholders.

83.     As a minority shareholder, Plaintiff, along with all other shareholders have been injured by Mr. Cooner's various breaches of his fiduciary obligations in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTIES AS TO MR. COONER AS DIRECTOR AND OFFICER OF THE COMPANY

84.     Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85.     As a director and officer of ITMO, Mr. Cooner owes a fiduciary duty to the Company and its Shareholders.

86.     As a director and officer of ITMO, Mr. Cooner has behaved in a self-dealing manner that has deprived Plaintiff the benefit of certain investment.

87.     As a director and officer of ITMO, Mr. Cooner has diverted investment from the Company for his own benefit and Defendant ITMO has failed to investigate these claims, thereby ratifying Mr. Cooner's behavior.

---

fundamental that one in control of a majority of the stock and of the board of directors of a corporation occupies a fiduciary relation towards the minority stockholders"). "[T]he burden is on the director or [dominant] stockholder." *Pepper*, 308 U.S. at 306.

88.     As a shareholder, Plaintiff, along with all other shareholders have been injured by Mr. Cooner's various breaches of his fiduciary obligations in an amount to be proven at trial.

89.     ITMO has also been injured by Mr. Cooner's various breaches of his fiduciary obligations in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### FRAUD

90.      Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91.     Defendants represented to Plaintiff, and other shareholders, that the investment funds would be used to develop an exchange to buy and sell carbon credits.

92.      Upon information and belief, Mr. Cooner and ITMO sought securities investment from shareholders, including Plaintiff, without any real intent to develop a marketable product.

93.     The shareholders, including Plaintiff, reasonably believed these funds would be used to develop the exchange.

94.     Based upon this belief, Plaintiff invested money in ITMO.

95.     Upon information and belief, Defendants used those funds to support the lavish lifestyle of Defendant Cooner, counter to the express promises made by Defendants to utilize the funds for business development.

96.     Upon information and belief, Defendant Cooner's spending has left ITMO without any funds to develop a product.

97.     Plaintiff was induced into investing based upon the promises made by Defendants.

98.     Based upon these promises, which Plaintiff reasonably believed to be true at the time, Plaintiff threw his support behind the project publicly, thereby inducing other would-be investors to invest in ITMO.

99.     Plaintiff has been injured by Defendants' fraudulent behavior in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD

100.     Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

101.     Even if the conducts described herein does not constitute Fraud, such conduct constitutes Constructive Fraud under the laws of Wyoming.

102.     Defendants undertook legal duties to Plaintiff in the various agreements between Defendants and Plaintiff.

103.     Defendants used Plaintiffs name and reputation in raising funds to further supplement Mr. Cooner's lifestyle.

104.     Plaintiff has been injured as a result of Defendants breaches of legal and equitable duties toward Plaintiff in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT

105.      Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

106.     Defendants made representations identified herein, with the express purpose of inducing Plaintiff to invest in ITMO.

107.    Such representations were made with the express purpose of misleading Plaintiff into investing so the Defendants could utilize that money to support Mr. Cooner's lifestyle.

108.    As described herein, Plaintiff reasonably believed these statements to be true when they were, in fact, false.

### SIXTH CAUSE OF ACTION
### CIVIL LIABILITY UNDER SECTION 10(b)(5)
### OF THE SECURITIES ACT OF 1934

109.    Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

110.    Section 10(b)(5) of the Securities Act of 1934 (1934 Act) creates in sellers of securities in unregistered offerings civil liability where a person in connection with the purchase or sale of a security directly or indirectly makes misstatements or material omissions of material fact which operates as a fraud or deceit upon any person.

111.    Specifically, Section 10(b)(5) of the 1934 Act can be invoked in connection with the purchase or sale of any securities.

112.    ITMO, organized under the laws of Wyoming, by and through Defendant Cooner, prepared and issued the SAFE agreement in conjunction with an offering of a Regulation D private placement.

113.    ITMO, through Cooner, specifically represented to investors, including Plaintiff, that investment funds were to support business operations in developing a carbon credit marketplace/exchange.

114.    IMTO and Cooner specifically represented to investors, including Plaintiff, that Plaintiff was the Chairman of the Board of Directors.

115.    These representations were made on numerous occasions by ITMO and Cooner.

116.   Defendants had a duty to be truthful and refrain from making any false or misleading statement in the SAFE, as well as in other communications made to Plaintiff, in the process of inducing Plaintiff to contribute intellectual property and money into ITMO.

117.   Plaintiff Terpin's position on the Board and the use of the money for business operations were material facts necessary for Plaintiff's evaluation in whether to invest.

118.   Upon information and belief, Defendant Cooner has run similar scams before, including with the Florida Entity, wherein Defendant Cooner raises funds without intent to develop the company or a product and uses the investments to fund his lifestyle. Once the funds are gone, Defendant Cooner abandons the company and forms a new entity to swindle an entirely new pool of investors.

119.   Defendants ITMO and Cooner acted with scienter in intentionally misrepresenting, through the SAFE as well as in other communication, to Plaintiff that the funds would be used for appropriate business expenses, including developing the Carbono Token.

120.   Plaintiff relied upon the representations made by Defendants, both in the SAFE and other written and verbal communications, regarding ITMO's intent to develop the carbon credit exchange as well as the Carbono Token.

121.   Nowhere in the SAFE, or in other written or verbal communications, was it communicated to Plaintiff that the funds would be used for personal expenses by Defendant Cooner.

122.   Plaintiff was justified in relying upon the promises and misstatements of Defendants.

123.   Plaintiff invested money in ITMO and has been injured by the material, and intentional, misstatements and other actions taken by Defendants.

124.     Plaintiff seeks damages due to the actions of Defendants, or at the minimum the right of recission in an amount equal to the contribution of Plaintiff for which he has been deprived value, plus interest and a reasonable return on investment.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE WYOMING SECURITIES ACT
### § 17-4-101(a)(i),  § 17-4-101(a)(ii), and § 17-4-101(a)(iii)

125.     Plaintiff restates and realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

126.     In connection with the offer and sale of a security, Defendants employed a device, scheme, or artifice to defraud Plaintiff.

127.     In connection with the offer and sale of a security, Defendants made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

128.     In connection with the offer and sale of a security, Defendants engaged in acts, practices, and courses of business that operated as a fraud or deceit upon Plaintiff.

129.     At all times during which Defendants sought to solicit investments from outside investors, as well as seek a contribution from Plaintiff, Defendant ITMO held itself out as a Wyoming Corporation.

130.     Defendants specifically represented to investors, including Plaintiff, that Plaintiff Terpin would be integral in the development and marketing of the Carbono Token.

131.     Defendants specifically represented to investors, including Plaintiff, that Plaintiff was Chairman of the Board of Directors and was intimately involved in the development of ITMO and the Carbono Token.

132.     These representations were made on numerous occasions by Defendants.

133.     Defendants' device, scheme, and artifice used to defraud induced Plaintiff to invest in ITMO, damaging Plaintiff in an amount equal to the value of his contribution, plus interest and a reasonable return on investment.

134.     Defendants omitted material facts necessary in order to make the statements made not misleading.  Defendants did not inform Plaintiff of their intent to use funds invested in ITMO as a personal bankroll for Defendant Cooner.

135.     Defendants did not represent to Plaintiff of its intention not to follow their representations and promises regarding management and governance of Defendant ITMO, nor that they would misappropriate ITMO's operating cash to fund Cooner's lifestyle.

136.     Defendant's acts, practices, and course of business operated as a fraud or deceit upon Plaintiff which cause Plaintiff to contribute money for which Plaintiff reasonably expected to be compensated.

137.     Defendants have damaged Plaintiff in an amount equal to the contribution by Plaintiff for which he has been deprived value, plus interest and a reasonable return on investment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Terpin, individually and as Director for ITMO US., Inc. prays for judgment as follows:

A.     Money damages in an amount to be proven at trial for Mr. Cooner's conversion of company resources.

B.     Money damages in an amount to be proven at trial for Mr. Cooner's breaches of his fiduciary duties as a controlling shareholder, director and officer of ITMO.

C.     Money damages in an amount to be proven at trial for fraud, constructive fraud, and fraudulent inducement by Defendants ITMO and Cooner.

D.      Money damages in an amount to be proven at trial for Defendants ITMO and Cooner's violation of federal and state securities laws.

E.      Pre-judgment interest of 7% per annum dating back to April 4, 2020 as allowed under Wyoming law;

F.      Post-judgment interest of 10% per annum as allowed under Wyoming law;

G.      Attorneys' fees and costs as allowed under Wyoming law;

H.      Punitive damages in an amount to be proven at trial; and

I.      Such other and further relief as this Court deems just and proper.

### <u>JURY TRIAL DEMANDED</u>

Plaintiff Michael Terpin demands a trial by jury on all issues that may be so tried.


DATED this 21st day of July, 2022.


MICHAEL TERPIN, INDIVIDUALLY AND AS
DIRECTOR OF ITMO US, INC.., PLAINTIFF


*/s/ Nathan Nicholas*
Matthew D. Kaufman, #6-3960
Lucas Buckley, #6-3997
Nathan Nicholas, #7-5078
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
(307) 634-7723
(307) 634-0985 (fax)
lbuckley@hkwyolaw.com
nnicholas@hkwyolaw.com

COUNSEL FOR PLAINTIFF